UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMON ZARATE, | |
| Plaintiff, | Case No. 19 CV 6581 |
| v. | |
| I.C. SYSTEM, INC., | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ramon Zarate sued Defendant I.C. System, Inc. ("ICS") for violation of the Fair Debt Collection Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, seeking damages. [20] ¶ 1. ICS now moves for judgment on the pleadings. [24-1]. For the reasons explained below, this Court grants ICS's motion.

**I.  Background**

ICS is a Minnesota-based business collecting consumer debts on behalf of other entities throughout the United States, including in the State of Illinois. [20] ¶ 6. In 2019, Surgical Care Associates. Ltd. ("SCA") contracted with ICS to collect certain debts, including a $1,830.00 debt owed by Plaintiff. *Id.* ¶ 12. ICS mailed its first collection letter to Plaintiff on January 3, 2019 (the "January Letter"). It read in part:

> If you do not communicate with us to discuss payment on this account, our client has authorized us to utilize additional remedies to recover the debt. Including sending the account to an attorney. *Id.* ¶¶ 12–14.

1

Six months later, on July 8, 2019, with Plaintiff's debt still outstanding, ICS sent Plaintiff another letter (the "July letter"). The July Letter read in part:

> This debt remains unpaid. We have recommended to our client that he send this debt to an attorney to present an action to charge you for the debt. You can still avoid the possibility of a lawsuit if you pay the debt or contact our office to discuss payment. *Id.* ¶¶ 15–16.

Plaintiff alleges that these letters threatened imminent litigation and constituted false, deceptive, or misleading statements by suggesting impending attorney involvement. *Id.* ¶¶ 17–18. Plaintiff further alleges that, in the six months between ICS's two letters, neither ICS nor SCA engaged an attorney in his case, suggesting that these entities had no intention of pursuing litigation. *Id.* ¶ 28. ICS denies that its letters threatened imminent litigation and denies that the statements it made in its letters were false, deceptive, or misleading. [24] at 13. To support this position, ICS attached to its answer an Affidavit from its Chief Compliance Officer Michelle Dove, its Collection Agreement with SCA, and account notes from Plaintiff's file. [23-1] at 1–2.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). When the movant seeks to "dispose of the case on the basis of the underlying substantive merits ... the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *U.S. Specialty Ins. Co. v. Vill. of Melrose Park*, No. 19 C 5232, 2020 WL 1923076, at *4 (N.D. Ill. Apr. 21, 2020) (quoting *Alexander v. City of Chicago*, 994

2

F.2d 333, 336 (7th Cir. 1993)). The pleadings include the complaint, answer, and any documents (including affidavits, letters, contracts) attached as exhibits to the complaint and answer. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998). The Court should grant a motion for judgment on the pleadings if "no genuine issues of material fact remain to be resolved" and the movant "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

## III. Analysis

### A. The FDCPA and the Unsophisticated Consumer

The FDCPA protects consumers from abusive, deceptive, and unfair debt collection practices. *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). In this regard § 1692e precludes a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and subsection (5) provides that communications that threaten "to take any action that cannot legally be taken or that is not intended to be taken" violate the Act. 15 U.S.C. § 1692e(5).

Whether a debt collector's communication is false, deceptive, or misleading is evaluated "through an objective standard of the 'unsophisticated consumer.'" *Simkus v. Cavalry Portfolio Services, LLC*, 12 F.Supp.3d 1103, 1107 (N.D. Ill. 2014) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004)). The unsophisticated consumer is "uninformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection

3

notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686 (7th Cir. 2017) (quoting *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007)). Although this standard presumes a low level of sophistication, it nonetheless "admits an objective element of reasonableness that protects debt collectors from liability for unrealistic interpretations of collection letters." *McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2016).

### 1. Violation of § 1692e(5)

A "threat to take any action that cannot legally be taken or that is not intended to be taken" violates § 1692e. 15 U.S.C. § 1692e(5). To prevail under this section, Plaintiff must allege both that Defendant threatened to take an action, and that Defendant either could not legally take, or did not intend to take, such action.

#### (a) The "Threat to take any action . . ."

For a "collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998). Courts have found "litigation threats even in indirect or oblique statements, provided that they imply legal action is underway or contemplated in the near future," and conversely found no threat of litigation when the collection letter shows that litigation is not underway or imminent. *Id.* Courts also consider whether the letter is sent from an attorney, a fact that "signals to the unsophisticated consumer that legal action is at hand." *Id.*

4

For a collection notice impermissibly to threaten legal action, "it must falsely communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." *Bandas v. United Recovery Serv., LLC*, No. 17 C 01323, 2018 WL 4286198, at *5 (N.D. Ill. Sept. 7, 2018) (internal quotations omitted). Therefore, even if an unsophisticated consumer interpreted the letter as "making even an 'indirect' or 'oblique' threat of litigation, the letter must 'indicate that legal action is underway or contemplated in the near future' to give rise to liability." *Id.*

ICS's January letter stated that if Plaintiff failed to communicate with ICS or failed to "discuss payment on this account, our client has authorized us to utilize additional remedies to recover the debt. Including sending the account to an attorney." [20] at ¶ 14. As in *Jenkins*, the letter identifies attorney involvement as one option among others. The letter does not, however, indicate that litigation is already underway or that it is imminent. Likewise, per Plaintiff's own allegations, the letter came from a debt collector and not an attorney, [20] at ¶ 13. Based upon the record, the letter passes muster even under the unsophisticated consumer standard, and this Court finds that Plaintiff has failed to allege a § 1692e(5) violation with respect to the January letter.[1]

Defendant sent Plaintiff a second letter on July 8, 2019, reminding Plaintiff that his debt with SCA remained unpaid and advising Plaintiff that ICS had "recommended to our client that he send this debt to an attorney to present an action

---

[1] Plaintiff alleges that the letter "threatened imminent litigation" upon non-payment, *id.* at 17, but without more (and there is no more here), this Court need not accept that legal conclusion.

5

to charge you for the debt. You can still avoid the possibility of a lawsuit if you pay the debt or contact our office to discuss payment." [20] at ¶ 16. This letter, framed in past tense, certainly comes much closer to crossing the line drawn in § 1692e(5). Here, ICS suggests that it has already conveyed a recommendation to contact attorneys and initiate legal action. The statement that any attorney would then "present an action to charge" suggests that the consequence of attorney involvement would be litigation. In short, this letter conveys the impression that an enforcement action is no longer hypothetical but a realistic outcome. *See Drennan*, 950 F. Supp. at 860. Similarly, as in Drennan, the letter includes language ("[y]ou can still avoid the possibility of a lawsuit") signaling an "ominous harbinger of things to come," and constituting threatening language. *Id.* Although the letter raises the "possibility" of litigation, the overall tone, viewed through the unsophisticated consumer prism, could give rise to an inference that litigation was already underway or imminent.

Based upon the pleadings, the Court finds that Plaintiff has sufficiently alleged that Defendant threated to take action in the July letter, but did not threaten to take action in the January letter.

### (b) " . . . that cannot legally be taken or that is not intended to be taken."

Assuming a collection letter threatens imminent legal action, to plead a violation of the FDCPA, a plaintiff must also allege that the defendant either could not, or did not intend to, take the threatened legal action. 15 U.S.C. § 1692e(5). An allegation that defendant failed to take the threatened legal action for a significant period of time may be enough to satisfy this element. *See Drennan v. Van Ru Credit*

6

*Corp.*, 950 F. Supp. 858, 861 (N.D. Ill. 1996). But the duration of the period of inaction matters. In *Drennan*, for example, the court found that a year of inaction after one letter and nine months of inaction after a second "lead to the reasonable inference that [defendant] did not intend to take the threatened or implied action, as required by [§ 1692e(5)]." *Id.* On the other hand, one, two, or three months of inaction are "inadequate to demonstrate that Defendant's threat to sue was an empty one." *Porter v. Law Office of Charles G. McCarthy, Jr. & Assocs.*, No. 09-1370, 2011 WL 3320331, at *7 (C.D. Ill. Aug. 2, 2011). *See also Hegwood v. Lighthouse Recovery Assoc., LLC*, No. 2:11 CV 292, 2012 WL 693658, at *4 (N.D. Ind. Mar. 1, 2012) (two months of inaction is not enough to demonstrate that defendant did not intend to sue).

Here, Plaintiff alleges that Defendant failed to involve an attorney in the six months between the January and July letters, [20] at ¶ 28. But, as explained above, the January letter did not threaten imminent legal action or attorney involvement. And Plaintiff does not allege that ICS failed to take action after the second letter. Moreover, Plaintiff sued three months after receiving the second letter, and, as explained above, three months of inaction cannot demonstrate the intent necessary to prove an FDCPA violation.

In response to Defendant's motion for judgment on the pleadings, Plaintiff argues that ICS misrepresented its authority to refer his account to an attorney, and that such misrepresentation violates § 1692e. [27] at 6. Even though Plaintiff failed to include this allegation in either his complaint or amended complaint, the Collection Agreement between ICS and SCA (which ICS attached to its answer) confirms that

7

ICS was, in fact, authorized to refer SCA accounts to attorneys for both litigation and non-litigation collection efforts. [23-1] at 6. Plaintiff correctly notes that ICS could refer SCA accounts to attorneys for litigation only after receiving authorization from SCA on a case-by-case basis. *See* [27-3] at 3. But the same contract authorized ICS to refer collection matters to attorneys for non-litigation action without prior authorization. *Id.*

Moreover, ICS submitted written documentation with its answer demonstrating that SCA had, in fact, authorized ICS to pursue "a litigation strategy" as early as July 8, 2019. [23-1] at 2, 9. On July 6, 2019, days before ICS sent Plaintiff the July Letter, ICS's notes indicate that Plaintiff's account was authorized for "attorney referral." [23-1] at 12. ICS's notes further confirm that, the day ICS sent the letter, ICS submitted a "[r]equest for authorization to litigate" and notified Plaintiff of "litigation recommendation." [23-1] at 9. Sixty days later, ICS initiated both a "pre-litigation" and "litigation" process. [23-1] at 12. ICS's documentation also shows that ICS initiated a "wait" phase, unsuccessfully attempting to reach Plaintiff by phone on September 26th in a "last attempt" to avoid litigation. *Id.* at 9. Plaintiff filed this lawsuit roughly one week later, on October 3, 2019. [1]. Documentation submitted with ICS's answer thus confirms that it intended to – and did – refer Plaintiff's debt to an attorney for litigation. ICS, in short, intended to take the action threatened in its letter. As a result, Plaintiff cannot show that the July letter was false or misleading in violation of § 1692e, and ICS is entitled to judgment as a matter of law on this claim.

8

## 2. Violation of § 1692f

In his amended complaint, Plaintiff also alleges violation of § 1692f, which precludes debt collectors from using "unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f. Plaintiff alleges that Defendant here threatened to send his case to an attorney—when it either had no intention of doing so or was not authorized to do so—to coerce him into making an immediate payment to avoid being sued. [20] at ¶ 28. Plaintiff relies upon the same allegations to support his § 1692e(5) claim; indeed he lumps his claims into a single count. As a result, his § 1692f claim fails to state an independent basis upon which relief can be granted. *See Hayes v. Receivables Performance Mgmt., LLC*, No. 17-CV-1239, 2018 WL 4616309, at *6 (N.D. Ill. Sept. 26, 2018); *Heffron v. Green Tree Servicing, LLC*, No. 15-CV-0996, 2016 WL 47915, at *5 (N.D. Ill. Jan. 5, 2016).

## B. Plaintiff's Claim for Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

In his amended complaint, Plaintiff alleges that Defendant engaged in unfair, abusive, and deceptive conduct when it threated to refer his debt to an attorney to file a lawsuit. [20] at ¶ 35. ICS moved for judgment on the pleadings on this claim as well and argues that Plaintiff abandoned the claim by failing to adequately address it in his response brief. [35] at 8. The Court disagrees. FDCPA and ICFA claims both hinge on deceptive and unfair debt collection practices, and Plaintiff's arguments concerning the nature of the conduct apply with equal force to both claims. Plaintiff argued in his response that ICS violated "both the FDCPA and ICFA by making a false, deceptive and/or misleading statement" to induce payment. [27] at 2. Thus,

9

Plaintiff sufficiently delineated and defended his ICFA allegations, and the Court will consider the parties' arguments on the merits.

> The ICFA provides in relevant part:
>
> unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged hereby.

815 ILCS § 505/2. The ICFA uses disjunctive language, and thus a plaintiff may proceed on a claim for either deception or unfairness. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013). The Act ought to be "liberally construed to effectuate its purpose." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). Plaintiff alleges both deceptive and unfair conduct. [20] ¶ 35.

To state a deceptive conduct claim, the Plaintiff must establish that: (1) a deceptive act or unfair practice occurred; (2) the defendant intended for plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff sustained actual damages; and (5) such damages were proximately caused by the defendant's deception. *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 277 (Ill. App. Ct. 2009). Although violating the FDCPA does not *per se* violate the ICFA, the same practice may implicate both statutes. *Mehra v. Law Offices of Keith S. Shindler Ltd.*, No. 14-CV-7506, 2015 WL 1996793, at *2 (N.D. Ill. Apr. 29, 2015). If a party pleads insufficient facts under a § 1692e claim, however, its ICFA claim on a deceptive conduct theory also fails. *Hayes*, 2018 WL 4616309, at

10

\*8. As a result, for the same reasons explained above, Plaintiff's deceptive conduct ICFA claim fails.

In considering the unfairness of business practices, courts weigh: (1) whether the practice violates public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers. *Hill*, 946 F. Supp. 2d at 826 (quoting *Robinson*, 775 N.E. 2d at 961). Plaintiff does not allege that ICS's formal, measured steps were either oppressive or contrary to public policy. Indeed, the pleadings confirm that ICS operated within its Collection Agreement with SCA and transparently communicated to Plaintiff the escalating consequences of continued failure to pay. Accordingly, any ICFA claim based upon an alleged unfair business practice also fails.

## IV. Conclusion

For the reasons explained above, this Court grants ICS's motion for judgment on the pleadings [24]. The Clerk is directed to enter judgment in ICS's favor and against Plaintiff on both counts of Plaintiff's amended complaint [20]. Civil case terminated.

Dated: June 24, 2020

Entered:

John Robert Blakey
United States District Judge